May it please the Court, Jason Van de Koor for Petitioner, Nastan Dinesh. I just want to, I guess, point out a couple of things. I think everything was briefed thoroughly in this case. One of the things that's really going on here is there's just a – the government is ignoring Dinesh's claim based on religion. Going so far as to chide her for not bringing it up in front of the Board of Immigrations while pointing to the portion of the record where she was bringing it up with the Board of Immigration. So it's not clear what else she was supposed to do. Well, wait a minute. At the IJ level, she made it, it looks to me like, perfectly clear that she did not belong to the Christian religion. She didn't really belong to any religion. She thought there was good stuff in all religions, but she was not, had not converted to Christianity. Didn't like Muslim religion, liked some things in Christianity, liked some things in other religions. That was her testament. She goes to the BIA and perhaps in her brief, she's a little bit wishy-washy, but she pretty much says, I'm a Christian now in her brief on the appeal from the IJ. Now, I guess what you need to do is tell us why the BIA was required to take up that issue because it appeared in her brief but does not appear in the record without her making a motion to rehear, a motion to remand for further evidence, et cetera, et cetera. And without anybody doing it since, by the way, as far as I can tell. No, that's correct. It has not been done since. So nobody has gone to the BIA and said, look, will you please reopen this because this lady is now a Christian. Her argument to them, of course, is I was a Christian all the time. And I didn't put that in front of the IJ because I had reasons, but I was always a Christian. So that undercuts her position even more. So I just put that as background to explain why it is the government is, quote, ignoring this issue. Well, and I think it sort of came through in your question of the shouldn't she go to the Board of Immigration and present this new evidence. She presented the new evidence to the Board of Immigration on the appeal. Well, where was that? I believe it's on the appeal to the Board of Immigration, AR-22. It's in her brief, I know. It's in her brief, correct. Putting it in her brief is presenting new evidence to the IJ? To the Board of Immigration appeal, correct. Because it went from the IJ to the Board of Immigration appeal. In this case, the Board of Immigration appeal adopted the immigration judges. That's presenting evidence? When you stick something in a brief? That's presenting evidence? She raised it. Wonderful. But that's presenting evidence? And by the way, the BIA doesn't hear evidence, we know. But that's presenting evidence, actually? Really? Not presenting evidence. Raised the issue that was ignored on the lower issue with the BIA, then the BIA chose to adopt the immigration judge's opinion in this matter. Yes. It would be the best. On what basis could the BIA have reached any other conclusion? On the basis of, well, her conversion to Christianity, based on the ---- The assertion in the brief? I guess that's the problem. Right. And the problematic, and I agree, there's an uphill battle, as was said by prior counsel here, on these certain issues that are in the record. But it was raised, I think it was, I agree, somewhat fairly unclear in the lower questioning, but it was raised as one of the basis for on her paperwork to the IJ. What that makes her, how does that, okay, let's just assume that she is now a Christian woman. How does that help her? Well, it helps her. Why would the BIA have decided that she was entitled to relief? Because of the changed circumstance rule that would alleviate the one-year time bar. The order adopted by the Board of Immigration found two bars to her asylum claim, one being firm resettlement, which we briefed and believed was an error of law. Two, saying, well, okay, even if she was not firmly resettled, then the one-year time bar would have barred her because she didn't prove extraordinary circumstances. The change in religion would fall under the change. You know, the record, the record of the IJ, I mean, beyond, I mean, there's more, but just very simply, do you have any religious preference or denomination you belong to? Well, yes, I actually prefer Christianity than Islam, yes. But I'm not officially, I don't have any religion right now. I don't believe in any religion, official religion, but I'm just exploring. That's what she said. That's what the record shows. That's the evidence in this case. And that is what she said in front of the IJ. I can't argue with you on that fact. That's what's in the record. That's her testimony. We worried that one around, but I think the shortest question is if you assume that she was, she had become a Christian and your answer went to asylum, what about withholding and convention against torture? I agree. It would also apply to the withholding and convention against torture. You're not subject to the firm resettlement problem or even the one-year bar, are they? Correct. I think the conversion to Christianity would make it more likely than not, is the test, that she would be persecuted and or tortured under the convention against torture because the official government penalty for conversion to Islam, to Christianity, is death. Yeah. So that was one of the things that was not considered under the convention against torture or withholding under the Immigration Act. So you're back to the same. Yeah. Correct. Yes. I mean, it's began with. Correct. So in essence, though, I wanted to touch a little bit on the firm resettlement issue where the order adopted by the Board of Immigration adopts the firm resettlement but goes outside the bounds of Ninth Circuit law and looks at the totality of circumstances, which is not the test in the Ninth Circuit. So the reasoning for barring on firm settlement is an error. If there's direct testimony, which can be the applicant's testimony if found to be credible, which I don't think there's any dispute about the credibility of the testimony, that she wasn't offered permanent residency, then the government has to offer direct evidence to prove its case that you were not firmly resettled here. They offered length of stay, other non-offer-based evidence. That is good for one of the exceptions under the firm resettlement. So if there's a finding of a firm resettlement, you're trying to get in under one of the two exceptions. Why did she testify she had asylum? That she had asylum. In Germany. It's unclear. No, it's unclear what her status of asylum in Germany actually was. She said she was not offered permanent residency. She testified she had asylum in Germany. That's what she testified. She said, I got asylum. Refugee status is a derivative of her husband. Okay. So she had asylum, and she was there, and she had a permanent resident permit. She just had to renew it from time to time. She could work at any job. She could do any of those other things. But one of the things we said, I think, in our recent en banc case is getting asylum, that's a pretty important factor to carry the government's case along. Well, it's unclear, and this is one of the reasons, actually, that probably in the case to say it should be remanded, it's unclear exactly what type of refugee status she had. They contacted the consulate, and the consulate couldn't determine what type of refugee status it was. It was inconclusive. The judge said he thought it may have lapsed for her family to renew, but he did not know. How does that cut? She had some kind of status, but it's not clear exactly what it was. Does that help her, or does that help the government? It helps her, because if the direct evidence in the case is she's saying she does not have permanent residency, that would be the only direct evidence in the case saying that she doesn't have permanent residency and they found her to be credible. I'd like to reserve some time. I'll just say I would like to answer this question, though. So in the absence of any contrary direct evidence, there can't be a finding of firm resettlement. But under the law, it would be almost that it would have to be remanded down to find out further whether she had permanent residence status under those documents that she had or was given. Okay. We have a minute for rebuttal. Thank you. Good morning, members of the Court. I'm Paul Furion, the Respondent. With respect to the resettlement issue, I think that page 242 of the record spells it out very clearly, that the Petitioner did have some form of firm resettlement. And the consulate confirmed this, that she was issued a document which was issued to the types of persons who had the right to reside permanently in Germany. And the evidence is fairly clear that she allowed this residency to lapse voluntarily. She was under no requirement by the German government to leave. The German government did nothing to force her hand. She just relinquished this asylum status voluntarily. Had her German status expired at the time she came to the United States? I don't know exactly, Your Honor. I mean, she has a passport, presumably of some sort. Yes. I don't know what kind of travel documents she needed. I don't know. But I would say that to the extent that she did allow it to lapse, and we think the evidence is fairly clear about that, that it's immaterial whether she allowed it to lapse in Germany or whether it happened after she got here. You mentioned there was a submission from the German consul saying that it had lapsed because she hadn't renewed it. Is that? I believe that's what it says, Your Honor. It's on page 242 of the record. All right. With respect to the religious conversion. She had asylum. All right. She had asylum in Germany. She had a residence permit in Germany. Yes. Did. Yes. And she had travel documents from Germany. Is that right? Yes. I believe that's correct. And those are the things we say are direct evidence that may satisfy the government's burden. That's what we said in our en banc. Yes. So she has those things. So then the problem, the residence lapse, I guess you have to argue about what happens to that evidence burden of going forward then? If I understand your question correctly, she allowed her residence to lapse. She failed to periodically renew her residence. We would say at that point that it doesn't affect the finding of being offered the firm resettlement. It merely shows that she declined to take it. And what she's now doing is basically forum shopping in the United States. And the purpose of the resettlement bar is to discourage that. So at this point, I guess the burden would be on the Petitioner to show that she was never offered firm resettlement. I'd like to touch on the religious conversion issue because there's a much more important issue that I didn't see when Petitioner was arguing, and it's the notion that there was new evidence presented before the Board of Immigration Appeals. It wasn't new. It was clearly contradictory, but it wasn't new. She said that in 2005, she said she had no religion. She preferred Christianity over Islam. And I believe that Judge Fernandez quoted it directly. But then when she went before the Board, she said she had converted to Christianity while she was in jail. And if you look at the record carefully, she was in jail for four months, and it would have been in late 2003. So what she's telling the Board is that she had converted to Christianity before she went to the immigration judge, to whom she told, I don't belong to any official religion. And we think that is very critical. And to the Petitioner, unfortunately, it's fatal to his entire case because it shows that she has no nexus for her asylum claim. She can't show persecution on any basis because she's not converted to Christianity. Moreover, it shows no motivation for anyone in her native country to want to torture her because there's no apostasy there. And so we think that's a very important issue that the Court should consider. And that also affects the late filing bar, the changed circumstances, because there really are no changed circumstances because any religious conversion that she would have had is essentially muddied at this point. We did mention in a 20HA letter that the Ramadan case is pending en banc rehearing. We would say, though, that to the extent that the Court does, as it does, review changed circumstances, that there were no changed circumstances in this case, nor were there extraordinary circumstances. We note that the Ramadan case was not changed. They didn't raise at any time medical condition, did they? Well, the Petitioner asserted that her late filing was essentially due to three reasons. She mentioned her mental problems. She said that her brother had counseled her to marry a United States citizen instead of filing for asylum, which she didn't want to do for ethical reasons. And the third reason she advanced was that at some point she was told, it's too late, don't even bother applying for asylum now. We don't think that any of those constitute extraordinary circumstances, and so that the immigration judge didn't abuse his discretion in finding that. I don't know how much they went into the medical. Her medical history is extraordinary. Well, it certainly is. I think it's been involuntarily committed several times, I think. But the immigration judge also found that she was able to function normally to attend school briefly during the period which she was obligated to apply for asylum. So we don't think that it's an abuse of discretion in that regard. Unless the Court has no further questions, that would conclude our presentation. Thank you. Thank you. Just quickly to answer one of the questions that was posed is on the burden on the asylum. The initial burden is on the government to prove firm resettlement. Then the burden would shift, and saying that she had residence, travel documents, those type of issuance in, we quoted one of the cases, I'll say it wrong, Composeco, that talked about having permanent renewable visa in a country doesn't grant permanent residence. As a matter of fact, it was someone who could travel from Mexico to the United States, didn't get back in time because of monetary concerns, was revoked, and the Court found that he did not, or was not able, or wasn't offered permanent resettlement just because he could continually renew his stay in Mexico. He had originally had a restricted stay, then had a broader stay. I think it was from an FM-8 in Mexico to an FM-3, and then an FM-2 would have given him a permanent residency, similar to what happened here. The government is not sure what happened as far as the lapsing of the documents. That's the government's burden to prove that. And here it's unclear what happened, and that should be remanded for further consideration. We understand. Thank you. Well, the case just argued is submitted for decision. Is Ms. Bell in the courtroom yet?
judges: Schroeder, Canby, Fernandez